IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL PARK and BRANDY :
LEE PARK, individually and as :
parents and legal guardians of :
minor children ERIE PARK, :
JOSHUA MICHAEL PARK, :
ELIZABETH MAE PARK, and :
DESIREE MARIE TARANTINO, :  CIVIL NO. 3:CV-09-2177
 :
   Plaintiffs :
 :
   v. :
 :
GARY VEASIE, individually and in :  Judge Sylvia H. Rambo
his official capacity; OFFICER :
MICHAEL BOGART, individually :
and in his official capacity; OFFICER :
BRIAN MARKOCHIK, individually :
and in his official capacity; and, :
THE BOROUGH OF WEATHERLY, :
 :
   Defendants :

**M E M O R A N D U M**

   Plaintiffs Michael and Brandy Park bring this civil rights case on their
own behalf and on behalf of their minor children as a result of Defendants' search of
their home on September 18, 2008.  Before the court is Defendants' motion to
dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure
12(b)(6), for failure to state a claim.  The parties have briefed the issues, and the
matter is ripe for disposition.

**I.**   **Background**

   **A.**  **Parties**

   Plaintiffs Michael and Brandy Park are adult individuals residing at 422
2nd Street, Weatherly, Pennsylvania, and are the parents and legal guardians of minor

children Joshua Michael Park (age 7), Erie Eugene Park (age 4), Elizabeth Mae Park (age 4), and Desiree Marie Tarantino (age 10). Defendant Gary Veasie is an adult individual and the chief of police for the Borough of Weatherly Police Department. Plaintiffs alleges that Veasie was the supervisor of all police activity, developed and implemented police policy, and was the ultimate authority within the Borough of Weatherly Police Department for the assignment of personnel. Defendants Michael Bogart and Brian Markochik are adult individuals and police officers with the Borough of Weatherly Police Department. The Borough of Weatherly is a municipal subdivision located within the Commonwealth of Pennsylvania.

### B. Facts

The following facts are from Plaintiffs' Amended Complaint and are taken as true for purposes of Defendants' motion to dismiss. On September 18, 2008, Veasie responded to a call by the Weatherly Elementary School that suspected drug paraphernalia had been found near, on in the possession of, Joshua Park (age 7). Upon arrival, Defendant Veasie had Joshua Park brought to a conference room for the purpose of interviewing the child. At the time of the interview, Veasie was aware of his obligation to conduct the interview in the presence of a parent or other responsible adult, but nonetheless questioned the child regarding the possession of suspected  drug paraphernalia without the presence of either of his parents.

Veasie enlisted the elementary school principal to assist in the interrogation of 7-year old Joshua Park. Veasie interrogated the child for approximately one-half hour, employing a series of suggestive questions, inviting the child to confirm the existence of criminal activity, including that similar drug paraphernalia was inside Plaintiffs' home. Veasie reported that he took a statement

from the child, and later had the 7-year old read and sign the statement. After the interrogation, Veasie released the child back to his class and obtained a search warrant for Plaintiffs' residence based only on the information obtained from Joshua Park.

Veasie did not contact Michael or Brandy Park to further investigate the child's statements and did not conduct any additional investigation regarding the alleged drug activity. At the time of the interview, Veasie was familiar with Plaintiffs' family, and had personal animus toward Plaintiff Michael Park because of a prior police incident. The prior incident involved Michael Park defending his right to park and store vehicles within the borough on the basis that Veasie had done the same.

Veasie enlisted the assistance of Defendants Bogart and Markochik to conduct the raid of Plaintiffs' house. Veasie knew at the time he selected them that Bogart and Markochik had limited experience in executing search warrants. According to Plaintiffs, it violated standard police procedures to use inexperienced officers to conduct drug raids. At the time he conducted the raid, Veasie knew that small children lived at the house.

At approximately 4:45 p.m. on September 18, 2008,[1] Veasie, Bogart and Markochik approached the house with guns drawn. They did not announce their identity, authority or purpose, and instead broke into the front door of the home. The door was hit with such force that the door's window was completely broken. Veasie, Bogart and Markochik entered the house with handguns and shotguns

---

[1]Plaintiffs' Amended Complaint states that the search took place on September 18, 2009, (*see* Doc. 4, Amend. Compl. ¶ 32), but based on the other dates in the Amended Complaint this appears to be a typographical error.

pointed at the Plaintiff children and Brandy Park, and yelled for the occupants of the home to stay still. Veasie, Bogart and Markochik then pointed their guns at Plaintiff Brandy Park and attempted to handcuff her, but ultimately did not do so after she pleaded with Defendants not to handcuff her in front of the children. Eventually, Brandy Park was allowed to sit with the children on a couch in the family room while Defendants searched the house. The search lasted for five hours. During the entire search, an armed police officer guarded Brandy Park and her children.

During the search, Plaintiff Michael Park arrived home from work and was met by Veasie and the other Defendants who handcuffed him with flex cuffs and held him outside. Michael Park was held in full view of his neighbors by Defendants until the search was complete.

Despite employing the use of a drug detection dog, Defendants found no evidence of the presence of unlawful or controlled substances at the house, although they did find two small pipes approximately 2.5 inches long that could be used to smoke a controlled substance. These two pipes were taken by Defendants, but never submitted for laboratory testing.

As a result of the search, Michael Park was charged with possession of drug paraphernalia, but those charges were later dismissed by the Carbon County District Attorney. Shortly after the search and seizure, Veasie received information and a statement from the person who left the two pipes in the home. The individual admitted to owning the pipes and informed Veasie that she left them at Plaintiffs' house while she was a guest there, and that she had done so without the knowledge of either Michael or Brandy Park. As a result of the search, Plaintiffs moved from

their home to stay with relatives because their children were terrified to remain there.

### C.   <u>Procedural History</u>

On October 20, 2009, Plaintiffs filed a complaint in the Court of Common Pleas of Carbon County, Pennsylvania, at Docket No. 09-CV-2782. That complaint asserted claims under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as Pennsylvania common law. On November 6, 2009, Defendants filed a Notice of Removal with this court asserting that the court has original jurisdiction over the claims raised in Plaintiffs' complaint pursuant to 28 U.S.C. §§ 1331 and 1343, and that the action was removable pursuant to 28 U.S.C. § 1441. (Doc. 1.) After removal, Plaintiffs filed an Amended Complaint on December 3, 2009. (Doc. 4.)

In their Amended Complaint, Plaintiffs assert sixteen counts. In Counts I-XII, Plaintiffs assert federal causes of action by stating that Defendants violated Plaintiffs rights protected by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Specifically, in these counts, Plaintiffs assert that Defendants violated Plaintiffs rights of: (1) freedom from unlawful arrest and seizure; (2) freedom from prosecution without probable cause; (3) freedom from unreasonably, unjustifiable, and excessive use of force; (4) not to be deprived of liberty and property without due process; (5) freedom from summary punishment; (6) freedom from arbitrary governmental action; and (7) freedom from governmental retaliation against Plaintiffs' exercise of freedom of speech. In Counts XII - XVI, Plaintiffs asserted supplemental state law causes of action.

On December 22, 2009, Defendants filed a motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action upon which relief can be granted, along with a supporting brief. (Docs. 7-8.) After receiving additional time to do so, on January 19, 2010, Plaintiffs filed their brief in opposition to Defendants' motion to dismiss. (Doc. 16.) No reply brief was filed. On May 3, 2010, this case was reassigned to the undersigned for all further proceedings due to the elevation of the Honorable Thomas I. Vanaskie from this court to the United States Court of Appeals for the Third Circuit. The motion is currently ripe for disposition.

## II.      Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007);

*Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.    Discussion

In their Amended Complaint, Plaintiffs bring both federal and state law claims. All of Plaintiffs' federal claims are brought pursuant to 42 U.S.C. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged violation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

In the instant case, there is no dispute that Defendants were acting under the color of state law.  As such, the court turns to the question of whether Plaintiffs have alleged sufficient facts plausibly demonstrating that they had rights protected by the Constitution and the laws of the United States that were violated by the Defendants.

For their part, Defendants assert that none of Plaintiffs' federal claims should go forward because each fails to state a cause of action, and that the court should decline jurisdiction as to Plaintiffs' state law claims.  In their motion to dismiss, Defendants assert the following: (1) Plaintiffs' official capacity claims against Defendants Veasie, Bogart, and Markochik should be dismissed because they are redundant of Plaintiffs' claims against the Borough of Weatherly; (2) Plaintiffs' claims for punitive damages against the Borough of Weatherly should be dismissed; and (3) Plaintiffs remaining claims should be dismissed because they either fail to state a claim upon which relief can be granted or they are not recognizable constitutional violations.  Plaintiffs have conceded to dismissal of their punitive damages claim against the Borough of Weatherly, and the court will not address that issue in this memorandum.  (*See* Doc. 16, Pls.' Br. in Opp'n to Mot. to Dismiss at 15 of 26.)  However, the court will address the remainder of Defendants' arguments.

### A.  Official capacity claims

In their Amended Complaint, Plaintiffs assert claims against Defendants Veasie, Bogart, and Markochik in both their official and individual capacities, as well as a claims against the Borough of Weatherly.  Defendants contend that Plaintiffs' claims against the individual Defendants in their official capacities should be dismissed because they are redundant of the claims against the Borough of Weatherly.  The court agrees.

It is well established that a suit against a state official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159,165-66 (1985) (quoting *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).  Under this standard, the claims against Defendants Veasie, Bogart, and Markochik in their official capacities are redundant with their *Monell* claims against the Borough of Weatherly.  Thus, the court will dismiss Plaintiffs' official capacity claims, and since no amendment would cure these defects the court will not permit Plaintiffs to amend their complaint as to their official capacity claims.

### B.  Fourth Amendment Claims

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995).  Plaintiffs' Amended Complaint, though not a model of clarity and precise pleading, alleges sufficient facts to state a cause of action for violation of the Fourth Amendment.  Plaintiffs contend that Defendants' questioning of 7-year old Joshua Park produced unreliable information that lead to the issuance of a search warrant for Plaintiffs' home, and

that in executing the warrant Defendants violated the knock and announce rule, unlawfully seized Plaintiffs, and used excessive force.[2]

The Amended Complaint alleges that Veasie was familiar with Plaintiffs' family and had personal animus toward Plaintiff Michael Park, and that when called to the Weatherly Elementary School to question 7-year old Joshua Park, he chose to enlist the assistance of the elementary school principal rather than call one or both of Joshua Park's parents. (Doc. 4, Amend. Compl., ¶¶ 21-22.) The Amended Complaint alleges that Veasie obtained unreliable information from Joshua Park and used this information to obtain a search warrant. (*Id.* ¶¶ 23-24, 26.) Veasie then allegedly assembled a raid team of untrained officers and, despite knowing that there were small children in the home, approached the home with guns drawn, failed to knock and announce their identity, authority and purpose, and broke into the front door with such force that the window in the door was broken. (*Id.* ¶¶ 24-33.) Defendants then engaged in a five hour search of Plaintiffs' home, where the searching officers pointed guns at Plaintiff Brandy Park and the minor children, and forced them to stay on the couch in the family room with armed guards standing nearby. (*Id.* ¶¶ 36-40.)

The Amended Complaint further alleges that upon arriving home, Plaintiff Michael Park was handcuffed and forced to stay on the front porch. (*Id.* ¶¶ 41-43.) The search yielded two small pipes that were later determined to belong to a

---

[2]It is not clear from Plaintiffs' Amended Complaint whether Plaintiffs intended to assert a specific cause of action connected to Veasie's questioning of Joshua Park without the presence of his parents. Both Plaintiffs' Amended Complaint and their brief in opposition to Defendants' motion to dismiss focus solely on violations of the Fourth Amendment that they allege occurred *after* the questioning of Joshua Park. Accordingly, the court will assume that Plaintiffs intended to provide the information concerning Joshua Park's interrogation as a part of their other Fourth Amendment claims, rather than as a stand alone claim.

guest who had stayed in the house.  (*Id.* ¶¶ 39, 46.)  Although Michael Park was arrested for possession of drug paraphernalia, the charges were dropped by the Carbon County District Attorney.  (*Id.* ¶ 45.)

Plaintiffs do not simply allege rote legal conclusions in their allegations of Fourth Amendment violations against Defendants Veasie, Bogart and Markochik; instead, they have supported their allegations of misconduct with specific actions that go beyond mere "labels"  *Iqbal*, 129 S.Ct. at 1949.

For instance, Plaintiffs allege that Defendants violated the "knock and announce rule" because there were no exigent circumstances compelling them to enter the residence without knocking given that there search was prompted when a 7-year old told police officers that there was possible drug paraphernalia—as opposed to drugs—present at the residence.  Since a "no-knock" entry is justified only when "the police [ ] have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime," *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997), these facts are sufficient to state a plausible violation of the Fourth Amendment.

In addition, the facts as plead by Plaintiffs concerning the alleged seizure and use of excessive force by Defendants Veasie, Bogart and Markochik go beyond allowing this court to infer "the mere possibility of misconduct."  *Iqbal*, 129 S. Ct. at 1950.  For instance, Plaintiffs' assertions that Defendants drew their weapons, pointed them at Plaintiffs, restrained the movement of Plaintiff Brandy Park and her minor children for five hours, and handcuffed Plaintiff Michael Park

during the search and prior to arrest are sufficient, if proven, to state a cause of action.

　　　　While there is no per se rule that pointing guns at people or handcuffing them constitutes an arrest, the "use of guns and handcuffs must be justified by the circumstances." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995). Furthermore, the court must "look to the intrusiveness of all aspects of the incident in the aggregate," *id.*, and here, adding up the use of guns, handcuffs, and the length of detention by Defendants amounts to a very substantial invasion of Plaintiffs' personal security. This is particularly true when coupled with the fact that the Defendants' search of the residence was prompted by the possibility of mere drug paraphernalia being present at the residence, which would not reasonably have caused the officers to use the kind of force Defendants are alleged to have used. Indeed, these facts "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

　　　　Therefore, the court concludes that, accepting Plaintiffs' allegations as true, they have pled facts sufficient to state plausible Fourth Amendment unreasonable search and seizure claim, as well as excessive force claims against Defendants Veasie, Bogart and Markochik in their individual capacities.

## C. Supervisory liability

　　　　In their Amended Complaint, Plaintiffs assert that Defendant Veasie is liable for his own participation in the allegedly improper search and seizure, but also because he directed and supervised the other Defendants in their participation of the alleged wrongdoing.

According to traditional Third Circuit precedent, supervisory personnel are only liable under § 1983 if they participated in or had knowledge of violations, if they directed others to commit violations, or if they had knowledge of and acquiesced in subordinates' violations. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995). However, with its decision in *Iqbal*, the Supreme Court cast doubt on the viability of this standard for holding government officials liable based on a theory of supervisory liability under § 1983. In *Iqbal*, the Supreme Court noted that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S.Ct. at 1948. The Court also emphasized that "[i]n a § 1983 suit or a *Bivens* action-where masters do not answer for the torts of their servants-the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. at 1949.

Various courts of appeals, including the Third Circuit, have recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a *Bivens* or a § 1983 suit. *See, e.g., Bayer v. Monroe County Children and Youth Servs.*, 2009 U.S. App. LEXIS 18181, at *8, 2009 WL 2477627 (3d Cir. 2009) (noting that, in light of *Iqbal*, "it is uncertain whether proof of ... personal knowledge [concerning a Fourteenth Amendment violation of procedural due process], with nothing more, would provide a sufficient basis for holding [the defendant] liable with respect to plaintiffs' Fourteenth Amendment claims under § 1983").

However, it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right. Here, Plaintiffs have alleged sufficient facts suggesting that Veasie was both personally involved in the improper search and seizure, *see* Part.III.B., above, and that he directed Defendants Bogart and Markochik to violate Plaintiffs' Fourth Amendment rights. For instance, Plaintiffs allege that Veasie intentionally chose officers with little training and experience in conducting a drug raid and that he was responsible for conducting the raid. (*See* Doc. 4, Amend. Compl. ¶ 28-29.) Combined with the more specific allegations that Plaintiffs make concerning Veasie's direct involvement, these allegations are sufficient to survive a motion to dismiss.

### D. *Monell* Liability

Defendants contend that even if Plaintiffs have alleged sufficient facts to state a cause of action against the individual Defendants, they have failed to sufficiently plead that the Borough of Weatherly should be liable for the conduct of its employees. Pursuant to *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658 (1978), a municipality can be liable only for an unconstitutional policy or custom carried out by its employees. To establish liability under *Monell*, a plaintiff must identify the challenged policy, attribute it to the municipality itself, and show a causal link between the execution of the policy and the injury suffered. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). A policy is shown "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting, in part, *Pembaur v. City*

*of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292 (1986)). A custom is shown when the practice of "state officials [are] so permanent and well settled as to virtually constitute law. *Id.* (internal quotations and citations omitted).

Here, Plaintiffs allege that Defendant Veasie was the policy maker for the Borough of Weatherly Police Department and that the Borough had various policies. However, Plaintiffs make no allegations as to how these policies led to the events that gave rise to their Fourth Amendment claims.[3] Plaintiffs have failed to allege any facts connecting the existence of any policy, practice or custom of the Borough of Weatherly to the actions that took place on September 18, 2008 when Joshua Park was questioned and when the search of Plaintiffs' residence took place.

Instead, Plaintiffs' allegations against the Borough of Weatherly constitute nothing more than a formulaic recitation of the elements of a *Monell* claim, the very thing the Supreme Court condemned in *Twombly*. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)(quoting Fed. R. Civ. P. 8(a).)

Here, Plaintiffs have failed to allege facts sufficient to support a finding that a decision maker possessing final authority to establish municipal policy issued such a policy that violated Plaintiffs' constitutional rights. Plaintiffs' complaint is also

---

[3]The only policy that Plaintiffs mention with any factual specificity is that in assembling his raid team, Veasie disregarded standard police procedures in his preparation for the raid and enlisted untrained police officer to assist him." (Doc. 4, Amend. Compl. ¶ 31.) This allegation tends to show that Veasie was *ignoring* policy rather than following it, and there is no suggestion in the Amended Complaint that this disregard for standard police procedure was so well settled that it constituted a *de facto* procedure. Accordingly, the court does not believe that this allegation assists Plaintiffs in demonstrating the existence of *Monell* liability, if anything, it proves the opposite.

16

devoid of sufficient facts to support their claim that Defendants established a custom so permanent and well settled as to virtually constitute law. Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' claims against the Borough of Weatherly.

However, the court cannot say that it would be futile to allow Plaintiffs' leave to further amend their complaint in an effort to properly plead the existence of *Monell* liability. Accordingly, the court will grant Plaintiffs limited leave to file an second amended complaint asserting *Monell* liability. Plaintiffs should be mindful that they must assert a factual basis for their claim sufficient to overcome the more stringent pleading standards imposed by the Supreme Court decision in *Iqbal*.

### E. Prosecution without probable cause

In their Amended Complaint, Plaintiffs have pled that Plaintiff Michael Park was prosecuted without probable cause. In response to Defendants' motion to dismiss asserting that this is not a viable cause of action, Plaintiffs contend that they were not attempting to assert prosecution without probable cause as a separate constitutional tort but as a part of Plaintiffs' Fourth Amendment claims. (*See* Doc. 16, Pls.' Br. in Opp'n to Mot. to Dismiss at 22 of 26.)

Plaintiffs are correct that they cannot pursue what amounts to a malicious prosecution claim under § 1983 based upon a substantive due process theory. This is true because the United States Supreme Court has ruled that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing

these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotations omitted.)  The Third Circuit has explained that:

> Albright implies that prosecution without probable cause is not, in and of itself, a constitutional tort.  Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution.  Thus, as the Court of Appeals for the Second Circuit stated in a post-Albright decision, a plaintiff asserting a malicious prosecution claim must show some *deprivation of liberty consistent with the concept of seizure.*

*Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir.1998) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995)) (internal quotations omitted) (emphasis added).  The Third Circuit held that "[b]ecause under the common law, the tort of malicious prosecution concerns 'perversion of proper legal procedures,' [Plaintiff] must show that he suffered a seizure as a consequence of a legal proceeding." *Id.*

Here, the facts alleged in the Amended Complaint do not plausibly assert a claim for prosecution without probable cause.  First, Plaintiffs indiscriminately assert this claim on behalf of *all* of them, rather than just on behalf of Plaintiff Michael Park.  There is no indication from the facts pled in the complaint that anyone other than Michael Park was charged with a crime.  Second, even as to Plaintiff Michael Park, the allegations to do not assert that he was seized "as a consequence of a legal proceeding." *Id.*  Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' complaint to the extent that it asserts a claim for prosecution without probable cause.  Because the court believes that any attempt by Plaintiffs to reassert this claim would be futile, the court will not allow Plaintiffs to amend their complaint as to this count.

**F.  Deprivation of liberty and property without due process**

In their Amended Complaint, Plaintiffs' assert generally that the factual allegations leading to the arrest of Michael Park constitutes a deprivation of their rights under the Fifth and Fourteenth Amendments.  The court will grant Defendants' motion to dismiss these claims for substantially the same reasons that Plaintiffs' prosecution without probable cause claim was dismissed.  All of Plaintiffs' claims arise from their allegation of a wrongful search and seizure, and the deprivation of liberty in question that was connected with the search of their home.  There are no facts suggesting that Plaintiff Michael Park was incarcerated even for a brief period of time as a result of his arrest.  Since the facts in Plaintiffs' Amended Complaint suggest that the Fourth Amendment was the textual source of the rights Defendants' allegedly violated, Plaintiffs' claims stem from that Amendment not some more "generalized notion of substantive due process."  *Albright*, 510 U.S. at 273.  Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' claims for a deprivation of liberty and property.  Given the complete absence of facts suggesting that Plaintiffs were deprived of any substantive liberty interest independent of those interests specifically afforded by the Fourth Amendment, the court concludes that any attempt by Plaintiffs to amend their due process claims would be futile.

**G.  First Amendment Retaliation**

In their Amended Complaint, Plaintiffs allege that their rights under the First Amendment were violated.  In general, constitutional retaliation claims are analyzed under a three-part test.  Plaintiffs must prove (1) that they engaged in constitutionally-protected activity; (2) that the government responded with

retaliation; and (3) that the protected activity caused the retaliation. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997) (public employee retaliation); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001). The threshold requirement is that Plaintiffs identify the protected activity that allegedly spurred the retaliation.

In this case, Plaintiffs argue that at some unspecified time in the past, Michael Park was cited for parking and storing vehicles within the Borough, and that he defended the citation by reference to the fact that Veasie apparently did the same thing. (*See* Doc. 4, Amend. Compl. ¶ 21.) Plaintiffs allege that as a result, Veasie was familiar with Plaintiffs and had personal animus towards Plaintiff Michael Park. This is insufficient to state a First Amendment retaliation claim.

First, at best, it is clear that the only plaintiff with a First Amendment retaliation claim is Plaintiff Michael Park against Defendant Veasie. There are no facts suggesting that any of the other Plaintiffs engaged in any protected activity whatsoever.

Second, even Michael Park's claim is deficient. Assuming, for the disposition of this motion, that Michael Park's complaint that he was being treated differently than Veasie regarding his ability to park and store cars in the Borough was constitutionally protected activity, the fact that Plaintiffs do not provide more detail about when and how these statements were made, as well as how Veasie became aware of them, leaves no way for the court to measure whether the search and seizure were in any way connected to this activity. The court is left with nothing more than an inference of the mere possibility of misconduct, which is insufficient as a matter of law. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).)  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  No reasonable inference can be drawn from the allegations made by Plaintiffs.

However, like Plaintiffs' *Monell* claim, there are sufficient facts in Plaintiffs' Amended Complaint to lead the court to conclude that it may not be futile to allow Plaintiffs an opportunity to amend Plaintiff Michael Park's First Amendment retaliation claim against Defendant Veasie.  Accordingly, the court will grant Plaintiffs limited leave to file a second amended complaint in order to plead sufficient facts which plausibly assert this claim.

## H.  Summary Punishment

In their brief in opposition to Defendants' motion to dismiss, Plaintiffs' acknowledge that they do not have a claim for summary punishment and agreed to withdraw that claim.  (*See* Doc. 16, Br. in Opp'n to Mot. to Dismiss at 25 of 26.)

## I.  State law claims

Although Defendants argue that the court should relinquish jurisdiction of Plaintiffs' state law claims based on their argument that Plaintiffs' federal claims are without merit, they make no substantive argument for the dismissal of those claims. Since the court will deny Defendants' motion seeking dismissal of Plaintiffs' Fourth Amendment claims, and will grant Plaintiffs limited leave to amend their

complaint in an effort to assert *Monell* liability and First Amendment retaliation claims, the court will retain jurisdiction over Plaintiffs' state law claims.

**IV.**       <u>**Conclusion**</u>

In accordance with the foregoing discussion, the court will grant in part and deny in part Defendants' motion to dismiss. The court will deny Defendants' motion to dismiss Plaintiffs' Fourth Amendment claims against Defendants Veasie, Bogart, and Markochik in their individual capacities. Those claims are well pled. The court will grant Defendants' motion in all other respects, but will grant Plaintiffs limited leave to file a second amended complaint. The court will permit Plaintiffs to file a second amended complaint as to their claims for *Monell* liability against the Borough of Weatherly, as well as Michael Park's claim of First Amendment retaliation against Gary Veasie. Amendment as to any other claim would be futile. The court will issue an appropriate order.

s/Sylvia H. Rambo
United States District Judge

Dated: June 9, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL PARK and BRANDY
LEE PARK, individually and as
parents and legal guardians of
minor children ERIE PARK,
JOSHUA MICHAEL PARK,
ELIZABETH MAE PARK, and
DESIREE MARIE TARANTINO,

                **Plaintiffs**

      **v.**

GARY VEASIE, individually and
in his official capacity; OFFICER
MICHAEL BOGART,
individually and in his official
capacity; OFFICER BRIAN
MARKOCHIK, individually
and in his official capacity; and,
THE BOROUGH OF
WEATHERLY,

                **Defendants**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

      **CIVIL NO. 3:CV-09-2177**

**O R D E R**

       In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, (Doc. 7), is **GRANTED IN PART AND DENIED IN PART** as follows:

       (1)  Defendants' motion is **DENIED** as to Plaintiffs' Fourth Amendment claims against Defendants Veasie, Bogart and Markochik in their individual capacities;

       (2)  Defendants' motion is **DENIED** as to Plaintiffs' state law claims, the court will retain jurisdiction over those claims;

       (3)  Defendants' motion is **GRANTED** in all other respects.

**IT IS FURTHER ORDERED THAT**, Plaintiffs are granted leave to file a second amended complaint no later than twenty (20) days from the date of this order to provide proper foundation for their Fourth Amendment claims against the Borough of Weatherly. Plaintiff Michael Park is also granted leave to amend his First Amendment retaliation claim against Defendant Gary Veasie. No other amendments are permitted.

If Plaintiffs choose to file a second amended complaint they must, of course, also reassert their Fourth Amendment claims against Defendants Veasie, Bogart, and Markochik in their individual capacities, and their state law claims in that pleading. If Plaintiffs do not file a second amended complaint within the time provided in this order, or longer if so ordered by the court, then this case will proceed only on Plaintiffs' Fourth Amendment claims against the individual Defendants in their individual capacities and Plaintiffs' state law claims.

The court will issue a separate order scheduling a case management conference.

s/Sylvia H. Rambo
United States District Judge

Dated: June 9, 2010.