## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL PARK and BRANDY LEE   :
PARK, Individually and as Legal   :
Guardians of Minor Children, ERIE   :
PARK, JOSHUA MICHAEL PARK,   :
ELIZABETH MAE PARK, and   :
DESIREE MARIE TARANTINO   :
  :
      Plaintiffs   :
    v.   :  **3:09-cv-2177**
  :  **(JUDGE MARIANI)**
GARY VEASIE, Chief of Police of the   :
Borough of Weatherly, Individually,   :
OFFICER MICHAEL BOGART,   :
Individually, OFFICER BRIAN   :
MARKOVCHIK, Individually, and the   :
BOROUGH OF WEATHERLY, a   :
Municipal Entity Within the State of   :
Pennsylvania   :
  :
      Defendants   :

## MEMORANDUM OPINION

The present motion for reconsideration asks the Court to address three issues: (1)

the application of the law of the case doctrine with regard to Judge Sylvia Rambo's July 9,

2010 Memorandum and Order regarding Defendants' Motion to Dismiss; (2) the propriety of

this Court's grant of summary judgment in favor of Defendants with regard to Plaintiffs'

excessive force claim as it relates to Defendants' use of weapons, and (3) whether the

undisputed facts of record support the Defendants' use of handcuffs.  For the reasons set

forth below, Plaintiffs' Motion for Reconsideration will be granted in part and denied in part, and the Court will decline to certify leave to file interlocutory appeal.

## **STANDARD**

A motion for reconsideration is a mechanism "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration is generally permitted only upon the basis of three grounds: (1) there is an intervening change in the controlling law; (2) new evidence becomes available; or (3) clear error of law or to prevent manifest injustice. *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)(citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

## **DISCUSSION**

Plaintiffs' Motion for Reconsideration requires the Court to address three specific points: (1) the applicability of the law of the case doctrine, (2) whether the Plaintiffs' excessive force claim survives summary judgment in light of Plaintiff Brandy Park's testimony as to the use of drawn weapons during the search of Plaintiffs' residence, and (3) whether the use of handcuffs on Plaintiff Michael Park on the undisputed facts of record constitutes excessive force under the Fourth Amendment.

I.    Law of the Case Doctrine

The law of the case doctrine "limits relitigation of an issue once it has been decided." *See In re Continental Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002). An examination of the law

2

of the case doctrine as it is applied in the Third Circuit reveals that district courts should exercise caution when reopening issues settled in earlier stages of the same litigation; however, some circumstances warrant, and some require, reconsideration. Additionally, if the earlier decision is clearly erroneous, it is the duty of the district court to ensure that the previous holding does not work a manifest injustice. See Arizona v. California, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318. "The doctrine is not a "barrier to correction of judicial error."' Shultz v. Onan Corp., 737 F.2d 339, 345 (3d Cir. 1984)(quoting Loumar, Inc. v. Smith, 698 F.2d 759, 762 (5th Cir. 1983)); see also Agostini v. Felton, 521 U.S. 203, 206, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); Rohrbach v. AT&T Nassau Metals Corp., 915 F. Supp. 2d 712, 716 (M.D.Pa. 1996).

Plaintiffs argue that Judge Rambo's July 9, 2010 Memorandum and Order regarding Defendants' Motion to Dismiss should have precluded this Court from entering summary judgment in Defendants' favor with regard to Plaintiffs' excessive force claims surrounding the use of weapons by Defendant police officers and the use of hand restraints to effectuate the detention of Michael Park. Plaintiffs' brief in support of their Motion for Reconsideration quotes Judge Rambo's opinion at length for the proposition that the seizure and excessive force claims were already validated by the Court, and thus unassailable at the summary judgment stage. Plaintiffs' argument is misguided because a previous ruling on a motion to dismiss does not necessarily bind the Court at the summary judgment stage. See McKenzie v. BellSouth Telecomms. Inc., 219 F.3d 508, 513 (6th Cir. 2000)("our holding on

a motion to dismiss does not establish the law of the case for purposes of summary judgment"); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)(holding that "interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case").

Judge Rambo's opinion denying Defendants' Motion to Dismiss does not preclude this Court from entering a contrary finding at the summary judgment stage. Plaintiffs' insistence that the law of the case doctrine binds this Court to follow Judge Rambo's opinion would require that all opinions denying motions for dismissal must, in effect, require the Court to hold similarly in a later summary judgment motion after the Court has had the benefit of discovery, including the provision of statements of undisputed material fact required by Fed.R.C.P. 56 and M.D. Local Rule 56.1. Such an assertion has no support in precedent, reason or logic.

## II.    Propriety of Use of Weapons

Plaintiffs' Motion for Reconsideration with regard to the propriety of the use of drawn weapons to execute the narcotics search warrant at issue in this case will be granted, and the issue will be preserved for trial. The Court grants reconsideration on the basis of its own review, and not on the basis of any argument or citation to the record presented in Plaintiffs' Motion or its brief in support.

As the Third Circuit noted in *Baker v. Monroe Tp.*, 50 F.3d 1186 (3d Cir. 1995), "the use of guns and handcuffs must be justified by the circumstances . . . ." *Id.* In *Baker,*

persons were detained by police officers as they arrived outside an apartment immediately

prior to the commencement of a drug raid at that address. As the police rushed into the

residence, three approaching visitors, including two teenagers, were pushed to the ground

at gunpoint, and were forced to remain there for at least fifteen minutes. Id. at 1193. The

Court found:

> Considering the facts in the light most favorable to the Bakers, the
> appearances were those of a family paying a social visit, and while it may
> have been a visit to a wayward son, there is simply no evidence of anything
> that should have caused the officers to use the kind of force they are alleged
> to have used.

Id. at 1194.

Notably, the facts in Baker indicate that the plaintiffs were held "in handcuffs and at

gunpoint." Id. In the present case, nothing in the record shows that Plaintiffs were ever

held at gunpoint beyond the initial entry into their residence. In addition, the record does not

indicate that Plaintiffs were thrown to the floor or held on the ground for any length of time.

Instead, the record shows that Plaintiffs, with the exception of Michael Park, who was not at

home when the search began and who remained on the porch until its completion, were

held in their living room and sat on the couch without handcuffs. This case presents facts

substantially different from those in Baker, where unwitting family visitors were forced to

remain on the ground "in handcuffs and at gunpoint." See id. Yet, Baker presents an

example of the use of guns and handcuffs by the police condemned by the Third Circuit

5

which serves as a framework within which the actions of the Defendants in this case can be analyzed.

Also useful to this Court's analysis in this case is the decision in *Pikel v. Garrett,* 55 F. App'x 29 (3d Cir. 2002). The decision in *Pikel* serves as another guidepost in establishing the line of demarcation between lawful and unlawful police conduct in connection with the use of guns and handcuffs. The Third Circuit applied *Baker's* reasoning in *Pikel* where it found the use of guns by police officers constitutional, and further granted police officers qualified immunity, following the execution of a warrant to search for drugs at Plaintiffs' business. *Pikel,* 55 F. App'x at 30. In *Pikel,* several of the persons on the premises, who were pushed to the ground during the search, "were not implicated in the drug investigation" and were left "handcuffed for approximately three and one half hours." *Id.* One of the plaintiffs sustained injuries and had a gun pointed at his ear when he did not respond to an officer's order to "get down". *See id.*

The *Pikel* opinion specifically recognizes the Supreme Court's instruction to "consider the stressful nature of interactions between suspects and the police in balancing circumstances to determine if the use of force is reasonable." *Id.* at *33.

> "Not every push or shove, even if may later seem unnecessary in the peace of a judge's chambers," . . . violates the Fourth Amendment. [Rather, t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Pikel*, 55 F. App'x at *32 (quoting *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Unlike the Third Circuit's holding in *Baker*, the *Pikel* court noted that the facts presented a "close call" when applied to the law, and ultimately found that the officers did not violate the Fourth Amendment and were also entitled to qualified immunity. *Pikel*, 55 F. App'x at 33. The Court of Appeals in both cases noted the inherently stressful and risky circumstances confronted by police officers during drug searches. *See id.* (citing *Baker*, *supra*, at 1191). Further, the Third Circuit recognized that "[t]he dangerousness of chaos is quite pronounced in a drug raid" and that "the occupants are likely to be armed," and "the police are certainly armed. . . ." *Id.* at *33 (citing *Baker*, *supra*, at 1191). The phrase "the police are *certainly* armed," *id.* at *33 (emphasis added), during the execution of a search warrant for narcotics carries substantial weight in any assessment of the use of weapons and any resulting claim of the use of excessive force.

Here, Plaintiffs assert that Defendants entered the house with guns drawn, including a shotgun. Although guns were admittedly carried during the search, nothing in the record indicates that Plaintiffs were held at gunpoint after the Defendants' initial entry into the Parks' home or that Brandy Park and her children were handcuffed or otherwise restrained. *See* Deposition of Brandy Lee Park 70:1-4, ECF Dkt. 81-3.

Nevertheless, on review of the record the summary judgment evaluation of Plaintiffs' excessive force claim turns on Brandy Park's allegation that officers pointed a weapon at her and her minor children. Specifically, Brandy Park testified:

Q. You said you saw Veasie, the short stocky one, was that a male?

A. Yes.

Q. You saw Bogart and other cops that you didn't know. I want to focus on those other cops. Were they male or female?

A. There was one female and like one other male that I haven't seen around town.

Q. You said you saw guns?

A. Yes.

Q. Who had guns?

A. Chief Veasie had one pointed at me, and then the short one I seen him with a gun. They all had – just they all just had guns.

. . . .

Q. Can you describe the type of gun that Veasie had that was pointed at you?

A. It was black.

Q. What about the size of it? Was it a long gun, and by long I mean like a shotgun?

A. No.

Q. It was a pistol, a short one?

A.    It was a little handgun.

. . . .

Q.    After the officers came through the door tell us what happened next?

A.    He came through the door. Chief Veasie kept walking towards me with a gun, and I came in – like I was walking backwards into the living room, and I turned to my left and seen my daughter with a gun pointed to her head.

Q.    Take your time. What daughter would that have been?

A.    Desiree.

Q.    Where was Desiree located at the time you saw her with the gun pointed towards her head?

A.    In the open way from the front room to the living room.

Q.    Do you know who was holding that gun that was pointed at Desiree's head?

A.    The short stocky one.

Deposition of Brandy Lee Park, at 61:8-21, 65:15-22, 66:3-21; ECF Dkt. 39-4.


Desiree Marie Tarantino is identified in the record as a 10-year old girl residing at the

Plaintiff's home. See Pls.' Second Am. Complaint at ¶ 6, ECF Dkt. 26. Brandy Park's

assertion as to the Defendants' pointing of a weapon at her and at 10-year old Desiree

Marie Tarantino, taken as true as it must be at the summary judgment stage, precludes a

grant of summary judgment to the Defendants. Accordingly, the question of the

reasonableness of the use of weapons under the circumstances presented in this case, and

the question as to whether the facts as presented by Brandy Park are true, must be reserved for a jury and the Court cannot provide Defendants with qualified immunity on these issues.

### III. Use of Hand Restraints

It is undisputed that a neutral magistrate issued a warrant for Plaintiffs' residence, founded upon probable cause, to conduct a search for both drugs and drug paraphernalia. The execution of such a search carries with it the implicit authority to detain persons inside the subject residence. See Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In Summers, the Supreme Court held that in the context of a narcotics search, "the existence of a search warrant . . . provides an objective justification for [a] detention." Id. at 703. "A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime." Id. "Thus a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given special authorization to thrust themselves into the privacy of a home." Id. "The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of an occupant." Id. at 703-04.

The Supreme Court in Summers further found:

> In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. Most obvious is the legitimate law enforcement

10

interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing risk to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

*Id.* at 702.

The broad holding in *Summers* is more narrowly tailored by the Third Circuit's opinion in *Baker, supra*, where the Court recognized that the "use of handcuffs must be justified by the circumstances." *Baker*, 50 F.3d at 1193. In *Baker*, the use of handcuffs was deemed unconstitutional where, "accepting the [plaintiff's] testimony, the police used [handcuffs] without any reason to feel threatened. . . ." *Id.* Here, unlike *Baker*, Defendants employed hand restraints because they had reason to feel threatened based upon Michael Park's size, the fact that on arrival at his home he was aggressive, cursing and "wailing" his arms, and because the warrant was issued to search for narcotics.

In *Torres v. U.S.*, 200 F.3d 179 (3d Cir. 1999), the Third Circuit found that "handcuffing may be excessive in certain circumstances." *Id.* at 185. In that matter, the Court held the use of handcuffs in a drug raid constitutional where police officers took precautions to ensure the comfort of the suspect by loosening his handcuffs and where the police "did not point their guns after the initial moments following the entry. . . ." *Id.* at 186. There, the police had reason to feel threatened and exercised their authority to exert

complete control over the scene. In the present matter, it was not unreasonable for the police to take the precaution of using handcuffs to restrain Michael Park on account of his size, emotional state, cursing and arm movements on arrival at his home, the prospect of violence as they removed his son, and the nature of the crime for which the warrant was executed. Here, the fear of violence clearly precipitated the decision to place Michael Park in handcuffs. Defendants were at Mr. Park's home to execute a search for narcotics. By its very nature, such a search creates a very volatile environment which can give rise to sudden violence.

The Court reaffirms its earlier determination that the undisputed material facts of record show Michael Park became emotional, that he initially demonstrated his emotional state by cursing and "wailing" his arms on arrival at his home while the search of those premises was under way and, later, by his admitted crying as his son was removed from his home.

In their Short and Concise Statement of Material Facts, Defendants maintain that "while Mr. Park did not make any verbal threats his emotions were running high." *See* Defs.' SMF at ¶ 34, ECF Dkt. 79. Defendants also aver that "[Michael Park] was in an unbalanced emotional state." *See* Defs.' SMF at ¶ 34. By way of Answer, Plaintiffs offer nothing beyond a vague and improper denial of this charge. *See Pls.' Ans. to Defs.' SMF* at ¶ 34, ECF Dkt. 81. Their assertion that the averments of ¶34 "def[ied] simple admission or denial" appears as a form of tactical avoidance of the requirement that each averment be

12

admitted or denied. The following sentences of Plaintiff's answer lend further support to this view of Plaintiff's response:

> By way of further objection, Plaintiffs cannot meaningfully respond to the vague assertions of fact which permeate this paragraph. The assertion that Mr. Park's "emotions were running high" is so undefined that it defies a response. Likewise, Plaintiffs cannot meaningfully respond to the contention that Mr. Park's undefined "emotional state" somehow was the justification for the use of restraints . . . ."

See Pls.' Ans. to Defs.' SMF at ¶ 34, ECF Dkt. 81. Plaintiffs are careful to assert that "Mr. Park made no threats, offered no physical resistance, and did nothing which would warrant the defendants' use of forcible restraints." See Pls.' Ans. To Defs' SMF at ¶ 34. Accepting each of Plaintiffs' statements of fact, but not the conclusory denial, as true, Defendants' Answer does not sufficiently or properly deny the Defendant's assertion that Michael Park's "emotions were running high" and that he "was in an unbalanced emotional state," where such denials were both required and able to be asserted as is required by FED. R. CIV. P. 56(c). Further, under 56(e), "if a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the Court may: . . . (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed, show the movant is entitled to it; . . . ."

Defendants further maintain that "Mr. Park seemed frustrated and was aggressive." See Defs.' SMF at ¶ 37. Defendants assert that "Mr. Park was cursing and wailing his arms." See Defs.' SMF at ¶ 37. Plaintiffs' Answer again fails to deny that Michael Park

acted in a manner showing that he was "frustrated" or "aggressive." *See* Pls.' Ans. to Defs.'

SMF at ¶ 37. Plaintiffs answered Defendants' SMF in the following manner:

> Denied as stated. The defendants have distorted Officer Morresi's testimony. While he testified that he supposedly saw Mr. Park "cursing and wailing his arms" in some unspecified fashion and at some unspecified time, Officer Morresi qualified his testimony by acknowledging that Mr. Park simply appeared frustrated, manifesting a "reasonable reaction to having multiple police officers in his home." Additionally, Officer Morresi testified that he never heard Mr. Park threaten any of the officers, never saw him doing anything that even suggested he would not comply with any orders, and did not see him doing anything that could be perceived as a threat.

*See* Pls.' Ans. to Defs.' SMF at ¶ 37.

Contrary to the Plaintiff's characterization of Morresi's deposition testimony,

Morresi did not testify that Mr. Park "simply appeared frustrated." Instead, Mr.

Morresi testified that Park "was aggressive, I will tell you that, screaming and cursing

and yelling. He's a big fellow." (Morresi Deposition, 112:6-7, ECF Dkt. No. 43-4)

Officer Morresi further answered, "Yes," when asked whether Park "looked upset"

and "appeared frustrated." *Id.,* 112:11-14.

Plaintiffs did not deny the facts asserted by Officer Morresi in his deposition

testimony. Further, the Court does not accept as a denial Plaintiff's Answer to Def.'s

SMF, ¶ 37, their statement that Morresi "testified that he supposedly saw Mr. Park

'cursing and wailing his arms' in some unspecified fashion at some unspecified time .

. . ."

14

Plaintiffs never deny that Michael Park was aggressive or was "cursing and wailing his arms," and they evasively and vaguely respond to the contention that he was "emotional." Such failures, as noted above, constitute admissions of fact and are insufficient to prevent the entry of summary judgment. *See Oliver v. Clinical Practices of University of Pennsylvania*, — F. Supp. 2d —, 2013 WL 420335, at *1 n.2 (E.D. Pa. Feb. 4, 2013)(citing *Robin Constr. Co. v. U.S.*, 345 F.2d 160 (3d Cir. 1965)("Mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment").[1]

Defendants point to specific deposition testimony to support their claims and denials regarding Michael Park's emotional state, while such evidentiary support is lacking with regard to Plaintiffs' denials. For instance, Chief Michael A. Morresi of the Beaver Meadows Police Department, who assisted in the search, testified that Michael Park was emotional upon his initial arrival at the scene. Chief Morresi specifically testified that when Michael Park arrived home, he got out of his car and "was cursing and wailing his arms saying, now what's going on." *See* Deposition of Michael A. Morresi at 107:6-9, ECF Dkt. 43-4. Chief Morresi further testified that Michael Park appeared "upset" and "frustrated." *See*

_____

[1] In *Oliver*, *supra*, the district court noted that "[i]n response to a number of the paragraphs in Defendants' Statement of Undisputed Facts, Plaintiff denies the paragraph outright or denies it as stated without providing proper factual support for the denial." *Oliver*, 2013 WL 420335, at *1 n2. "Specifically, Plaintiff denies some paragraphs because she disagrees with the perception of others and denies as stated many other paragraphs on the basis that Defendants' description takes portions of deposition testimony out of context." Id. "In either case, however, Plaintiff does not state facts that contradict the facts described by Defendants." Id. "We do not consider Plaintiff's unsubstantiated responses to create a factual dispute for the purpose of our analysis." Id. Applying this analysis to the case at bar, Plaintiffs fail to provide adequate facts to substantial their denial of facts established in the depositions contained in the record.

Deposition of Michael A. Morresi at 112:11-14. Although Plaintiffs maintain that Michael

Park was cooperative with the police, Plaintiffs do not deny and nothing in the record

disputes Morresi's testimony that Michael Park was cursing and wailing his arms on arrival

and appeared "upset" and "frustrated" prior to his placement in hand restraints. In fact,

Morresi testified that "[Michael Park] was upset the entire time, from getting there until

leaving he was upset." See Deposition of Michael A. Morresi at 124:11-12. In his affidavit,

Michael Park makes the following representations:

> 7. Prior to being place in handcuffs, I did not disobey or threaten to disobey any
> of the orders or directions given to me by any of the police officers.
>
> 8. Prior to being placed in handcuffs, I did not flee, attempt to flee, or threaten to
> flee. My wife and children were inside the home and I was not permitted
> inside the house to see them, although I asked to see them, the police would
> not allow it.
>
> 9. When I was told that I was going to be placed in handcuffs, I did not resist or
> object. I voiced no objection, not because I believed that the police were
> acting properly, but because I was not going to disobey the instructions given
> to me by armed police officers.
>
> 10. At the time I was placed in handcuffs, the police had total control over the
> premises. The officers did not appear, in any way, nervous, panicked, or
> fearful. The only people in my home at that time were my wife, my four
> children, the law enforcement officers, and the Children and Youth Worker. I
> knew Officer Bogart, Officer Markovchick, and Chief Veasie, and they knew
> who I was.

Affidavit of Michael Park at 7-10, ECF Dkt. 78-4.

No part of Michael Park's statement contradicts or challenges Chief Morresi's

testimony that Michael Park was cursing and wailing his arms and became "upset" and

16

"frustrated" prior to his placement in handcuffs. Similarly, nothing in Plaintiffs' Revised Statement of Material Facts contradicts or challenges Chief Morresi's testimony. The only representation made by Plaintiffs is that "[b]efore he was handcuffed, Mr. Park did not threaten the police or do anything that suggested to them that they were in any way endangered by him." *See* Pls.' SMF at ¶ 52.

Plaintiffs' Amended Statement of Material Facts asserts that "[b]efore he was handcuffed, Mr. Park did not threaten the police or do anything that suggested to them that they were in any way endangered by him." *See* Pls.' Am. SMF at ¶ 52, ECF Dkt. 78. Defendants' Answer denies this claim: "Michael Park, upon arrival home, was highly emotional and would serve as a distraction in the home which was highly cluttered." *See* Defs.' Ans. to Am. SMF at ¶ 52, ECF Dkt. 82. "Mr. Park was observed cursing and wailing his arms and being aggressive." *See* Defs.' Ans. to Am. SMF at ¶ 52. Plaintiffs' statement that Michael Park made no threat to the officers at the scene does not create a dispute of material fact. In fact, Plaintiffs do not provide any support from the record to show that Michael Park was not emotional, while Defendants point to substantial evidentiary support for their statement of fact that Michael Park was "emotional."

No dispute exists that Michael Park was cursing and wailing his arms on arrival, that he was aggressive and upset, and frustrated and became emotional before and during his detention [2], because Plaintiffs, by their limited and inadequate denials, have failed to create

---

[2] The Court did not make a finding in its Summary Judgment Opinion of April 20, 2012 that Michael Park was "calm"; rather, the Court merely recognized that Plaintiffs were arguing in favor of such a finding. As

17

a factual dispute. Contrary to Plaintiffs' assertion, the Court did not find facts in the course of deciding the excessive force claims. The Court did not resolve "disputed questions of fact in favor of the defense." See Pls.' Br. in Supp. Mot. to Reconsider at 9, ECF Dkt. 87. Plaintiffs' further assertion that the Court must conclude that Michael Park was not emotional is misguided because Plaintiffs never denied that Mr. Park was aggressive, emotional, or cursing and wailing his arms when he arrived at the scene of the search. The Court did not resolve any disputed fact in its earlier opinion; rather, the Court ruled upon those undisputed, material facts presented by the parties in accordance with the Federal Rule of Civil Procedure 56.

Plaintiffs contend that, in its earlier opinion, the Court concluded that the "facts 'present a close call,' and decided those facts in favor of defendants, the moving party." See Pls.' Br. in Supp. Mot. to Reconsider at 9. A review of our prior opinion shows that this is not the case. Plaintiffs removed the phrase ("presents a close call") from its context, which actually reads: "the undisputed facts present a close call." See Opinion of April 20, 2012 at 19, ECF Dkt. 84 (emphasis added). With this statement, the Court made clear its view that the "close call" arose when the applicable law was applied to the undisputed facts. Such a conclusion is hardly unusual in circumstances such as those before the Court in this case, where the reasonableness of police conduct is at issue; note the Court's statement in

---

discussed above, the facts contained in the record do not support the assertion that Michael Park was calm upon his arrival at the scene.

*Pikel* that "[a]t the very least the circumstances of the Pikel search make the reasonableness of the appellants' force a 'close call'." 55 F.App'x at 32.

In evaluating the totality of circumstances to determine whether it was proper to handcuff Michael Park, objectively reasonable officers could conclude that an unrestrained parent, who had already demonstrated signs of aggression at the scene of a drug raid, would become emotionally unstable and possibly dangerous, if there was a possibility that his child could be placed into state custody. Michael Park filed an affidavit in this matter in which he indicates that at the time of his arrival, the Children and Youth worker was already at the scene. *See* Affidavit of Michael Park at ¶ 10, ECF Dkt. 78-4. It was not unreasonable for Defendants to require Michael Park to be restrained and separated from the rest of his family during the search, especially given the fact that his young son who precipitated the search was present and the officers called family services prior to the commencement of the search.

On the undisputed facts of record, the police had reason to believe that the environment into which they entered was unstable, and that placing handcuffs upon the 5'6" to 5'7, 250 pound suspect, would add some measure of safety to their uncertain task. The Court refuses to quarrel with this judgment call, especially given Michael Park's behavior upon his initial arrival at the house.

The analysis as to whether reasonable police officers knew that they were violating Michael Park's civil rights given the unforeseeable circumstances with which they might be

presented during the search of a private home for narcotics necessitates a finding of qualified immunity with respect to the placement of hand restraints upon him. The Third Circuit has articulated a two-prong test to determine the applicability of qualified immunity. "In determining whether qualified immunity applies, we ask: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and, if so, (2) whether the right was clearly established at the time of the alleged violation." *United Artist Theater Circuit, Inc. v. Tp. of Warrington*, 316 F.3d 392, 398 (3d Cir. 2003)(citing *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "A right is clearly established if 'its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right.'" *Id.* (citing *Sterling v. Borough of Minersville*, 232 F.3d 190, 193 (3d Cir. 2000)). Even if the use of handcuffs was unconstitutional, the Defendants would nevertheless remain subject to qualified immunity because the undisputed facts suggest the existence of an unstable environment surrounding the search, further fueled by the prospective removal of Joshua Park from his parents' custody. The placement of Michael Park in hand restraints eased that tension, provided stability, and removed the possibility that Michael Park could interfere with the search or harm anyone present.

Couple these facts together with the undisputed fact that Defendants searched the Park residence for drugs following the issuance of a search warrant because of the drug paraphernalia brought by one of the Park children to school, the need to provide Defendants' with some degree of latitude in the exercise of their discretion becomes clear.

The Court does not condone the superfluous or improper use of hand restraints, but the Court is similarly unwilling to second-guess the on-site judgments of police officers who handcuffed a drug-suspect during a raid at his home and under the circumstances detailed in discovery. The combination of factors present during the search provides a reasonable basis to conclude that the Defendants did not act in an unconstitutional manner, and at the very least, should be entitled to qualified immunity.

Finally, with regard to the length of Michael Park's detention, the record indicates that he was placed in hand restraints upon his arrival at the scene. *See* Pls.' SMF at ¶ 49, ECF Dkt. 78. This is consistent with *Summers's, supra,* allowance for officers to take command of a scene in order to execute a narcotics search warrant in a safe and orderly fashion. Michael Park's own affidavit indicates that the hand restraints were removed toward the end of the search and after Joshua Park was removed from the scene, thus reinforcing the idea that he was restrained for the purpose of the safety of the officers and Joshua Park, and for the additional purpose of allowing them to conduct an orderly search of the residence. *See* Affidavit of Michael Park at ¶ 12. Accordingly, the length of time Michael Park was detained, approximately three to four hours on his front porch, does not offend the Fourth Amendment. *See Pikel,* 55 F. App'x at 30 (handcuffing of persons present for the execution of a warrant to search for drugs at a business for a period of three and a half hours was constitutional).

## CONCLUSION

For the reasons set forth in this memorandum, Plaintiff's Motion for Reconsideration

will be granted in part and denied in part. A separate Order follows.

Date: March 19, 2013

Robert D. Mariani
United States District Judge